1   Samuel Gonzalez a living man
    Executor, Director and Beneficiary for
2   SAMUEL GONZALEZ
3   8719 Cavel Street
    Downey, CA 90242
4   Defendant, Counter-Claimant,
    Third-Party Plaintiff in Pro Se
5



~2:55 PM
FILED
CLERK, U.S. DISTRICT COURT

APR 25 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

6              UNITED STATES DISTRICT COURT
               CENTRAL DISCTRICT OF CALIFORNIA
7
                                        CV12   03604  GHK (VBKx)
8   RANCHO HORIZON, LLC,
                                        Case No.: 12C00650  NOTICE OF REMOVAL
9   Plaintiff,
                                        COUNTER-CLAIM AND
10  v.                                  THIRD-PARTY COMPLAINT FOR:
                                        F.R.CIV.P.13. COUNTERCLAIM;
11                                      F.R.CIV.P.14. THIRD-PARTY;
    SAMUEL GONZALEZ  and Does 1to10 ,   F.R.CIV.P.64(b) REPLEVIN;
12  Defendants.                         F.R.CIV.P.70(b)VESTING TITLE;
                                        F.R.CIV.P.81(c) REMOVED
13  ───────────────────────────────     ACTIONS;
14  SAMUEL GONZALEZ
    Defendant, Counter-claimant,
15  Third-Party Plaintiff,
                                            1.  U.S. CONST. AMENDMENT
16  v.                                          IV;
                                            2.  U.S. CONST. AMENDMENT
17                                              VII;
18  METRO FINANCIAL, SAND CANYON            3.  U.S. CONST. AMENDMENT
    CORPORATION FKA OPTION ONE                  XIV" ,
19  MORTGAGE CORPORATION,                   4.  SECURITIES AND
20  SOUNDVIEW HOME LOAN TRUST 2006-             EXCHANGE ACT OF 1934
    OPT5, DEUTSCHE BANK NATIONAL               Sec. 10 SECURITIES FRAUD;
21  TRUST COMPANY, WELLS FARGO             5.  SECURITIES ACT OF 1933 Sec.
22  BANK, N.A., SAND CANYON                     5. Prohibitions relating to
    CORPORATION FKA, POWER DEFAULT              Interstate Commerce and the
23  SERVICES, INC., FIDELITY NATIONAL           Mails;
24  TITLE COMPANY, ANDREW                   6.  SECURITIES ACT OF 1933 Sec.
    FUERSTENBERGER, Vice President  for       10. Improper Prospectus
25  DEUTSCHE BANK NATIONAL TRUST                information;
26  COMPANY an Individual, ELIZABETH       7.  SECURITIES ACT OF 1933 Sec.
    BOULTON, Vice President, for, SAND          II. Civil Liabilities on Account of
27  CANYON CORPORATION FKA  and                 False Registration Statement;
28  DOES 1 through 10 inclusive, Third-Party  8.  SECURITIES ACT OF 1933 Sec.
                                               12. Civil Liabilities Arising in

NIS

Fee Paid

                                    1
                            ─────────────────
                            NOTICE OF REMOVAL



Defendants

Connection with Prospectuses and Communications;
9. SECURITIES ACT OF 1933 Sec. 15. Aid and Abet;
10. SECURITIES ACT OF 1933 Sec. 17. Fraudulent Interstate Transactions;
11. SECURITIES ACT OF 1933 Sec. 22. Jurisdiction of Offenses and Suits;
12. QUIET TITLE
13. 15 U.S.C. Sec. 1962g VALIDATION OF DEBTS;
14. R.I.C.O. 18 U.S.C. Sec. 1962 et seq.;
15. 15 U.S.C. Sec. 1681 Fair Credit Reporting Act;
16. 18 U.S.C. Sec. 1956 Laundering of Monetary Instruments;
17. 18 U.S.C. Sec. 495 Contracts, Deeds, and Powers of Attorney;
18. 18 U.S.C. Sec. 473 Dealing in Counterfeit Obligations or Securities;
19. 18 U.S.C. Sec. 474 Plates Stones, or Analog, Digital, or Electronic Images for Counterfeiting Obligations or Securities;
20. California Civil Code 2929; 2923.5 et seq.; 2933; 2924; 2932.5; 2935-2937;
21. California Business & Professions Code 17000, 17200-17210; California Civil Code 1710(1) Fraud and Deceit;
22. California Civil Code 1095;
23. Rescission of Trustee's Deed Upon Sale California Civil Code 1058.5;
24. Recoupment California Civil Code 676.6 et seq. ;

2

25. California Commercial Code
    3106;3201;3301;3302;3306;
    3307; 3308;3309; 960 I;
26. INJUNCTIVE
    DECLARATORY RELIEF;

COUNTER-CLAIM, THIRD PARTY
COMPLAINT FILED
CONCURRENTLY WITH NOTICE
OF REMOVAL

TRIAL BY JURY DEMAND

---

## COUNTER-CLAIM, THIRD-PARTY COMPLAINT

Defendant, counter-claimant Third-Party Plaintiff Samuel Gonzalez in good faith respectfully submits this Counter-claim and Third-Party Complaint

## PARTIES

## PLAINTIFF

RANCHO HORIZON, LLC, in the business of funding.

## DEFENDANT,

## COUNTER-CLAIMANT, THIRD-PARTY PLAINTIFF

Defendant, Counter-claimant Third-Party Plaintiff Samuel Gonzalez a living, flesh and blood man made in the image of God and at all times herein was the owner and is a consumer in equitable interest of her subject property and currently resides in the State of California, County of Los Angeles addressed at 8719 Cavel Street, Downey, CA 90242.

## THIRD-PARTY DEFENDANTS

METRO FINANCIAL, an unknown company whose address is 1000 South San Gabriel Blvd., Suite 106, Rosemead, CA 91770, SAND CANYON CORPORATION FKA OPTION ONE MORTGAGE CORPORATION,

3

(SPONSOR/SELLER) an unknown company whose address is 3 Ada, Irvine CA, 92618, ATTENTION: SOUNDVIEW HOME LOAN TRUST 2006-OPT5, 1761 East St. Andrew Place, Santa Ana, California 92705, WELLS FARGO BANK, N.A., (CUSTODIAN), 24 Executive Park, Suite 100, Irvine, California 92614] California 94005; DEUTSCHE BANK NATIONAL TRUST COMPANY, (TRUSTEE), who's company address is 1761 East St. Andrew Place, Santa Ana, California 92705; POWER DEFAULT SERVICES, INC., (TRUSTEE) an unknown company whose address is C/O Fidelity National Title company 17593 E. 17th Street, Suite 300, Tustin, CA 92780, ANDREW FUERSTENBERGER an Individual, whose address is 1761 East St. Andrew Place, Santa Ana, California 92705;

Defendant, Counter-Claimant, Third-Party Plaintiff Samuel Gonzalez is unaware of the true names and capacities, whether individual, corporate associate, or otherwise of Third-Party Defendants Does I through 10, inclusive and therefore sues Third-Party Defendants by such fictitious name and will ask leave of court, if necessary, to amend this Counter-Claim, Third-Party Complaint to show the true names and capacities when the same have been ascertained

## NATURE OF ACTION

Defendant, counter-claimant, Third-Party Plaintiff Samuel Gonzalez submits this Counter-Claim, Third-Party Complaint pursuant to Civil Procedure Rule 13, Rule 14, Rule 8(c)1 Removal, Rule 64 Replevin. Defendants Counter-Claimants, Third-Party Plaintiff was misled, deceived, deprived from his Real Property by Plaintiff and Third Party-Defendants committing an illegal, wrongful sale of my Real Property on February 21, 2012 via fraudulent foreclosure proceedings, fraudulent documents and practices. The Wrongful Sale failed to comply with multiple Federal and State Laws engaged in organized crime by the fabrication of insolvent

documents pertaining to fraudulent foreclosure proceedings willfully committed by Third-Party Defendants and Plaintiff against Defendant, Counter-claimant, Third-Party Plaintiff Samuel Gonzalez an American Citizen, Defendant, Counter-Claimant, Third-Party Plaintiff in good faith seeks Due Process of Law in The united states District Court, Central District of California as Demanded by The Constitution of The United States of America Amendments IV, VII, XIV.

Justice and Discovery is requested in this Court pursuant to the unknown facts of the whereabouts of the true owner (Creditor) of the indebtedness of the subject Promissory Notes secured by a Deed of Trust.

Plaintiff RANCHO HORIZON, LLC is not a bona fide purchase.

Third-Party Plaintiff's note was sold and converted to a Mortgage Backed Security, which was placed in a Trust Pooled, SOUNDVIEW HOME LOAN TRUST 2006-OPT5 in New York by way of a Pooling and Service Agreement. (see Pooling and Service Agreement registered at SEC Government web link; http://www.sec.gov/Archives/edgar/data/1363671/000088237706002459/d518435_8k.htm

This is Authenticated Clear Evidence that my property was securitized, by placing my MORTGAGE BACKED SECURITY in a New York Trust (SOUNDVIEW HOME LOAN TRUST 2006-OPT5 and registered with the Security Exchange Commission then structured as High Risk to Low Risk Certificates, fractionalized and sold to investors.

The Governing Law of the Pooling and Service Agreement registered with the SEC and falls under Article XI Miscellaneous Provisions; Section 11.04 GOVERNING Law; JURISDICTION.   This Agreement shall be construed in accordance with the laws of the **State of New York**, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws, without giving effect to principles of conflicts of laws.

5

A Bloomberg Report of the Prospectus Filing shows the SOUNDVIEW HOME LOAN TRUST 2006-OPT5 very active where Third-Party Plaintiff's MBS is held.

## Bloomberg Report:



Name of Trust that is confirmed on document # 20101944269

Discovery is requested by Defendant, Counter-Claimants, Third-Party Plaintiff in this court pursuant to Federal Rules of evidence Rule 901 and Rule 1002 to be proven by Plaintiff and Third-Party Defendants in order to show lawful ownership and standing of a creditor to be eligible to collect any indebtedness from the subject Promissory Note in question.

Plaintiff RANCHO HORIZON, LLC, and Third-Party Defendants filed a fraudulent Trustee's Deed Upon Sale with the Los Angeles County Recorder's

6

Office and the Los Angeles Superior Court of Downey inducing reliance of this document to perpetrate its fraud.

Third-Party Plaintiff moves the Court to have Plaintiff and Third-Party Defendant's show only original authentic wet ink documents.

## JURISDICTION

Jurisdiction is conferred pursuant 28 U.S.C. 1331 to the subject Real Property in question is in boundary of the United States District Court, Central District of California. Venue is appropriate pursuant to F.R.CIV.P.13. COUNTERCLAIM; F.R.CIV.P.14. THIRD-PARTY; F.R.CIV.P.64(b) REPLEVIN; F.R.CIV.P.70(b)VESTING TITLE; F.R.CIV.P.81(c) REMOVED ACTIONS; 28 U.S.C. Sec. 1441; and 28 U.S.C. Sec. 1331; 28 U.S.C. Sec. 1332.

## FACTS

At all times relevant herein Defendant, Counter-Claimant, Third-Patty Plaintiff was the owner of record, and is the "Real Party In Interest" under F.R.C.P. 17 and consumer in equitable title interest of the subject "Promissory Note" secured by a Deed of Trust in the State of California, County of Los Angeles encumbering his Real Property subject to this litigation in Judicial Question, located at 8719 Cavel Street, Downey, CA [90242].

On April 21, 2006 Defendant, Counter-Claimant, Third-Party Plaintiff Samuel Gonzalez entered in to a contract/Deed of Trust with METRO FINANCIAL. The contract/Deed of Trust were the Securitization Scheme was never disclosed to Defendant, Counter-Claimant, Third-Party Plaintiff, Samuel Gonzalez.

7

On April 21, 2006 Defendant, Counter-Claimant, Third-Party Plaintiff Samuel Gonzalez executed what was represented to him as loan documents for a loan that he would receive that included a "Deed of Trust" in favor of Third-Party Defendant Metro Financial. a California Corporation in the amount of $395,000.00. Third-Party Defendant INVESTORS TITLE COMPANY, as Trustee of the Deed of Trust.

## EXHIBIT 1 DEED OF TRUST DOC. 06-0957554

Third-Party Plaintiff was never given any copies of the Promissory Note to the Deed of Trust that he signed.

Third-Party Defendant Metro Financial converted Counter-Claimant Third-Party Plaintiffs, "Promissory Note" and placed it with OPTION ONE MORTGAGE CORPORATION, who in turn Pooled it with SOUNDVIEW HOME LOAN TRUST 2006-OPT5.

Third Party Defendant SOUNDVIEW HOME LOAN TRUST 2006-OPT5 issued a Pooling and Servicing Agreement engaging the Promissory Note of Defendant, Counter-Claimant, Third-Party Plaintiff. The Mortgage Backed Security was pooled with SOUNDVIEW HOME LOAN TRUST 2006-OPT5. Please see pooling and servicing agreement, Sarbanes Oxley Act and 8k Current Report filed in The Securities and Exchange Commission website:

http://www.sec.gov/Archives/edgar/data/1363671/000088237706002459/d518435_8k.htm

8

Please see attached first five pages of the Pooling and Service agreement;

**EXHIBIT 2 POOLING AND SERVICING AGREEMENT AND 8K REPORT**

On May 6, 2010 Third-Party Defendant Default Resolution Network Agent for the Beneficiary By: ServiceLink, its Agent Through ServiceLink as agent, through SPL, Inc., as authorized agent., executes a Notice of Default in favor of Third-Party Defendant Plaintiff METRO FINANCIAL.  The Notice of Default was recorded on May  7, 2010 as Document Number 2010-0629950 against the Real Property of Defendant, Counter-Claimant, and Third-Party Plaintiff Samuel Gonzalez. Please see attached;

**EXHIBIT 3 NOTICE OF DEFAULT DOC.** 2010-0629950

On December 30, 2010 Third-Party Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY., as trustee FOR SOUNDVIEW HOME LOAN TRUST 2006-OPT5, ASSET-BACKED CERTIFICATES, SERIES 2006-OPT5, BY AMERICAN HOME MORTGAGE SERVICING INC., SERVICING INC. AS ATTORNEY IN FACT, executes a Substitution of Trustee substituting Third-Party Defendant POWER DEFAULT SERICES, INC. as trustee.  Also Known As Third-Party Defendant POWER DEFAULT SERICES, INC. The Substitution of Trustee was recorded on December 30, 2010 in the State of California, County of Los Angeles Recorder's Office Document Number 2010-1944270. Please see attached;

**EXHIBIT 4 SUBSTITUTION OF TRUSTEE DOC.** 2010-1944270

On December 20, 2010 Third-Party Defendant POWER DEFAULT

SERVICES, INC., acknowledges and unpaid debt in the amount of $408,386.01 in

favor of Third-Party Defendant METRO FINANCIAL.  The Notice of Trustee's

Sale was recorded on December 30, 2010 in the State of California, County of Los

Angeles Recorders Office Document Number 2010-1944271 please see attached;

**EXHIBIT 5 NOTICE OF TRUSTEE'S SALE DOC.** 2010-1944271

On July 26, 2010 Third-Party Defendant POWER DEFAULT SERVICES,

INC., as trustee grants and conveys without warranty or covenant of the Real

Property of Defendant, Counter-Claimant, Third-Party Plaintiff in favor of Third-

Party Defendant Plaintiff RANCHO HORIZON, LLC AND THIRD-PARTY

Defendants in the amount of $300,400.00. The Trustee's Deed Upon Sale was

recorded in the State of California, County of Los Angeles Recorder's Office on

February 27, 2012 Document Number 201 2-0303557 in favor of Third-Party

Defendant Plaintiff RANCHO HORIZON, LLC, all of its right title and interest in

and BENEFICIAL INTEREST please see attached;

**EXHIBIT 6 TRUSTEE'S DEED UPON SALE DOC.** 201 2-0303557

Defendant, Counter-Claimant, Third-Party Plaintiff, OBJECTS and

challenges all of the wrongful accounting committed by Third-Party Defendant

POWER DEFAULT SERVICES, INC., as trustee and Plaintiff, RANCHO

HORIZON, LLC  HAVE NO LEGAL STANDING OF A CREDITOR OR A

10

HOLDER IN DUE COURSE AND HAVE FAILED TO VALIDATE the

Promissory Notes Indebtedness as required by Federal law prior to issuing any claim

of any property or debt. In violation of Validation of Debts Fair Debt Collection

Practices Act 15 U.S.C. 1692g Section 809.

Third-Party Plaintiff alleges that POWER DEFAULT SERVICES, INC.,

HAD NO LAWFUL AUTHORITY TO sell Third-Party Plaintiff's property because

it is in a New York Trust (SOUNDVIEW HOME LOAN TRUST 2006-OPT5)

governed by New York Trust Law and Registered with Security Exchange

Commission under Federal Law, therefore California state Courts did not have

Jurisdiction, Impersona Jurisdiction, Subject Matter Jurisdiction and In REM

Jurisdiction.

On February 24, 2012 Plaintiff/Third-Party Defendant RANCHO HORIZON,

LLC filed an Unlawful Detainer Action against Defendant, Counter-Claimant,

Third-Party Plaintiff Samuel Gonzalez, whereby Third-Party Plaintiff challenges of

improper forum were completely ignored by the state court.  (see unlawful detainer

Exhibit 7)

This court is the proper forum for this matter.

On March 2, 2012 Third-Party Plaintiff filed answer to the unlawful detainer

and demand for jury trial. (see Answer Exhibit 8)

NOTICE OF REMOVAL

On February 16, 2012 Defendant, Counter-Claimant, Third-Party Plaintiff Samuel Gonzalez received the professional opinion of Rhonda Arellano a Certified Bloomberg Securitization Auditor. Please see full report attached;

### EXHIBIT 9 SECURITIZATION ANALYSIS REPORT

Defendant, Counter-Claimant, Third-Party Plaintiff Samuel Gonzalez deny, object to all unlawful fabricated documents, assignments willfully fabricated by Third-Party Defendant POWER DEFAULT SERICES, INC., as trustee, and Plaintiff RANCHO HORIZON, LLC in essence of Notice of Default, Substitution of Trustee, Notice of Trustee's Sale, Trustee's Deed Upon Sale.

Third-Party Defendants POWER DEFAULT SERICES, INC., as trustee and Plaintiff RANCHO HORIZON, LLC claim ownership via a wrongful sale willfully committed to deprive Defendant, Counter-Claimant, Third-Party Plaintiff Samuel Gonzalez.

Plaintiff/Third-Party Defendant RANCHO HORIZON, LLC, Plaintiff and Third-Party Defendant DEUTSCHE BANK NATIONAL TRUST COMPANY as Trustee, and SOUNDVIEW HOME LOAN TRUST 2006-OPT5 as Trust and Third-Party Defendants acted in malice behavior against Third-Party Plaintiff.

Third-Party Defendants and Plaintiff Fabricated Counterfeit obligations entitled and sold as Residential Mortgage-Backed Securities in the form of Pass-Through Certificates herein known as "Collateralized Debt Obligations", "Mortgage

Promissory Notes" deceiving Defendant, Counter-Claimant, Third-Party Plaintiff and Consumers Nationwide.

Defendant, Counter-Claimant, Third-Party Plaintiff Samuel Gonzalez respectfully submit to the Court conclusion of the Report issued on February 16, 2012 by Certified Mortgage Securitization Auditor **Rhonda Arellano States:**

On February 16, 2012 I researched the online database of the SEC and Bloomberg of subject property located at 8719 Cavel St. Downey, Ca. 90242

Based on the information I was provided, Samuel Gonzalez signed a Promissory Note in favor of Metro Financial on February 17, 2006.

Loan was identified in Soundview Home Loan Trust 2006-OPT5 with the Master Servicer being, OPTION ONE MORTGAGE CORPORATION the Sponsor/Seller being OPTION ONE MORTGAGE CORPORATION and the Depositor being Metro Financial

The basis of the identification of Loan in Soundview Home Loan Trust 2006-OPT5 Based on the following factors/information from Soundview Home Loan Trust 2006-OPT5 loans that corresponds exactly with Samuel Gonzalez's loan document provided: Original amount: $395,000.00; Location of Property: 8719 Cavel St. Downey, Ca. 90242. Property Type: Single Family Residence.

Samuel Gonzalez's Note was split-apart or fractionalized, as separate accounting entries and deposited separately into Classes. Each Class is insured up to 30 times the face value of each Note therein, which is permissible under the Federal Reserve System.

No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as

defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void *ab initio*. Therefore, either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.

Since the loan was sold, pooled and turned into a security, the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

Further said, once the Note was converted into a stock, or stock equivalent, it is no longer a Note.  If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping.  Double dipping is a form of securities fraud.

Once a loan has been securitized, which the aforementioned loan had been many times, it forever loses its security component (i.e., Deed of Trust) and the right to foreclose through the Deed of Trust is forever lost.

The promissory Note has been converted into a stock as a permanent fixture.  It is now a stock and governed as a stock under the rules and regulations of the SEC; hence, the requirement for the fillings of the registration statements, pooling and servicing agreements, form 424B5, etc.  There is no evidence on Record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the Note, such that the Deed of Trust and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed (Federal Rules of Evidence Rules 901 & 902).

Metro Financial, was a "correspondent lender" that originated mortgage loans which in turn, was sold and transferred into a "federally-approved securitization" trust named Soundview Home Loan Trust 2006-OPT5

The written agreement that created the Soundview Home Loan Trust 2006-OPT5 is a "Pooling and Servicing Agreement" (PSA), and is a matter of public record,

available on the website of the Securities Exchange Commission.  The Trust is also described in a "Prospectus Supplement," also available on the SEC website.  The Trust by its terms set a "CLOSING DATE" On or about June 19th, 2006.  The promissory note in this case became trust property in compliance with the requirement set forth in the PSA.  The Trust agreement is filed under oath with the Securities and Exchange Commission.  The acquisition of the assets of the subject Trust and the PSA are governed under the law and available on the website of the Securities Exchange Commission.  The Trust is also described in a "Prospectus Supplement," also available on the SEC website:

http://www.sec.gov/Archives/edgar/data/1363671/000088237706002459/d518435_8k.htm

   The Trust by its terms set a "CLOSING DATE" On or about June 19, 2006.  The promissory note in this case became trust property in compliance with the requirement set forth in the PSA.  The Trust agreement is filed under oath with the Securities and Exchange Commission.  The acquisition of the assets of the subject Trust and the PSA are governed under the New York State law and the SEC. The promissory Note has been converted into stock certificates as a permanent fixture. It is now a stock certificate and governed as a stock certificate under the rules and regulations of the SEC hence, the requirement for the fillings of the registration statements, pooling and servicing agreements, form 424B5, etc. there is no evidence on Record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the note, such that the Deed of Trust and Note has been irrevocable separated, thus making a nullity out of the

purported security in a property, as clamed (Federal Rules of Evidence Rule 901 & 902).

Metro Financial was a "correspondent lender" that allegedly originated mortgage loans which in turn, was sold and transferred into a "federally-approved securitization" trust named SOUNDVIEW HOME LOAN TRUST 2006-OPT5. The written agreement that created the SOUNDVIEW HOME LOAN TRUST 2006-OPT5 is a "Pooling and Servicing agreement (PSA), and is a matter of public record, available on the website of the Securities Exchange Commission. The Trust by its terms set a "CLOSING DATE" On or about June 19, 2006.

SEC Laws clearly state these loans must be in the trust no later than 90 days and Third-Party Plaintiff's note was not placed with the Trust within the time frame allowed by the PSA. A complete violation of the Federal Tax Code Violation.

The Trust agreement is filed under oath with the Prohibitions relating to Interstate Commerce and the Mails; SECURITIES ACT OF 1933 Sec. 10. Improper Prospectus information; SECURITIES ACT OF 1933 Sec. 11. Civil Liabilities on Account of False Registration Statement; SECURITIES ACT OF 1933 Sec. 12. Civil Liabilities Arising in Connection with Prospectuses and Communications; SECURITIES ACT OF 1933 Sec. 15. Aid and Abet; SECURITIES ACT OF 1933 Sec. 17. Fraudulent Interstate Transactions; SECURITIES ACT OF 1933 Sec. 22. Jurisdiction of Offenses and Suits; QUIET TITLE; 15 U.S.C. Sec. 1962g

VALIDATION OF DEBTS; R.I.C.O. 18 US.C. Sec. 1962 et seq.; IS US.C. Sec. 1681 Fair Credit Reporting Act; 18 US.C. Sec. 1956 Laundering of Monetary instruments; 18 U.S.C. Sec. 495 Contracts, Deeds, and Powers of Attorney; 18 US.C. Sec. 473 Dealing in Counterfeit Obligations or Securities; 18 U.S.C. Sec. 474 Plates Stones, or Analog, Digital, or Electronic Images for Counterfeiting Obligations or Securities; California Civil Code 2929; 2923.5 et seq.; 2933; 2924; 2932.5; 2935-2937; California Business & Professions Code 17000, 17200-17210; California Civil Code 171 OC 1) Fraud and Deceit; California Civil Code 1095; California Penal Code 115, 115.5, 118, 470, 182 and 32, Rescission of Trustee's Deed Upon Sale California Civil Code 1058.5; Recoupment California Civil Code 676.6 et seq. ; California Commercial Code 3106; 3201; 3301; 3302; 3306; 3307; 3308;3309; 9601;

**INJUNCTIVE DECLARATORY RELIEF;**

On ALL CAUSES OF ACTION Third-Party Defendants and Plaintiff continue to act in concert via constructive fraudulent, corrupt, business practices proceeding in bad faith conscience conduct in a scheme of securities fraud and theft of Real Property. The above mentioned violations damage, taint, and cause Slander of title of the Subject Real Property of Defendants, Counter-Claimants, Third-Party Plaintiff.

## JURISDICTION

Defendants, Counter-Claimants, Third-Party Plaintiffs seek original, authentic evidence pursuant to Federal Rules of Evidence Rule 901 , Rule 902, Rule 1002 Defendants, Counter-Claimants, Third-Party Plaintiffs Respectfully submit to The United States District Court, Central District of California ALL 7 EXHIBITS under Judicial Notice Federal Rules of Evidence Rule 201(b)(c)(d).

WHEREFORE: DEFENDANT, COUNTER-CLAIMANT,THIRD-PARTY PLAINTIFF Samuel Gonzalez PRAY JUDGEMENT AS FOLLOWS ON ALL CAUSES OF ACTION:

Third-Party Defendants, and Plaintiff RANCHO HORIZON, LLC ORDER FOR PRODUCTION OF THE ORIGINAL WET INK PROMISSORY NOTE IN ORDER FOR DEFENDANT, COUNTERCLAIMANT, THIRD-PARTY PLAINTIFF TO. NO COPYS OR Defendants, Counter-Claimant, Third-Party Plaintiffs as required by California Civil Code 1095, California Civil Code 2932.5, 2929.

THIRD-PARTY DEFENDANTS/PLAINTIFF RANCHO HORIZON, LLC, SOUNDVIEW HOME LOAN TRUST 2006-OPT5, (TRUSTEE) DEUTSCHE BANK NATIONAL TRUST COMPANY, POWER DEFAULT SERVICES, INC., (SPONSOR/SELLER), OPTION ONE MORTGAGE CORPORATION, (DEPOSITOR) METRO FINANCIAL, (MASTER SERVICE) OPTION ONE

18

MORTGAGE CORPORATION, (CUSTODIAN) WELLS FARGO BANK, N.A,

FAIL TO BE A HOLDER IN DUE COURSE.

## **CONCLUSION**

The sale of Third-Party Plaintiff's property does not exist without proper chain of

recordation. Third-Party Plaintiff's Mortgage Backed Security was in the Pool Trust

and was not transferred or assigned to POWER DEFAULT SERICES, INC. ANY

ATTEMPT TO TRANSFER THE BENEFICIAL INTEREST OF A TRUST DEED

WITHOUT OWNERSHIP OF THE UNDERLYING NOTE IS VOID UNDER

CALIFORNIA LAW.

Careful review and examination reveals that this was a securitized loan. I supply this

report as written testimony and am available for oral testimony as a Credible

Witness.

Rhonda Arellano

Certified Mortgage Securitization Auditor Please see attached EXHIBIT 8 for full

Securitization Report.

## **ALL CAUSES OF ACTION**

F.R.CIV.P.13 . COUNTERCLAIM; F.R.CIV.P.14. THIRD-PARTY; F.R.CIV.P.

64(b) REPLEVIN;F.R.CIV.P.70(b) VESTING TITLE; F.R.CIV.P.81(c)

REMOVED ACTIONS; AMENDMENT IV; U.S. CONST. AMENDMENT VII;

U.S. CONST. AMENDMENT XIV; SECURITIES AND EXCHANGE ACT OF 1934 Sec. 10 SECURITIES FRAUD; SECURITIES ACT OF 1933 Sec. 5.

The organized crime committed by Plaintiff RANCHO HORIZON, LLC and Third-Party Defendants POWER DEFAULT SERICES, INC., as trustee, DEUTSCHE BANK NATIONAL TRUST COMPANY, SOUNDVIEW HOME LOAN TRUST 2006-OPT5 and all Third-Party Defendants via the fabrication of counterfeit, insolvent foreclosure documents with no valid standing to foreclose in full conscience of interstate commerce engaged in fraud via the Unlawful Foreclosure Documents being sent from Plaintiff and Third-Party Defendants via United States Postal Service with absolute intention to mislead, defraud, deceive, deceit, and deprive Defendant, Counter-Claimant, Third-Party Plaintiff and consumers nationwide from their Real Property.

THIRD-PARTY DEFENDANTS DEUTSCHE BANK NATIONAL TRUST COMPANY, SOUNDVIEW HOME LOAN TRUST 2006-OPT5, AND PLAINTIFF RANCHO HORIZON, LLC. FAIL TO FIT REQUIREMENTS OF A SECURED CREDITOR. CONSIDERING AS FACT THIRD-PARTY DEFENDANT AND PLAINTIFF FAILED TO COMPLY WITH 15 U.S.C. 1692g Sec. 809 Validation of Debts prior to recording a Notice of Default against the Real Property of Defendant, Counter-Claimant, Third-Party Plaintiff confirming any ownership or servicing rights of the Promissory Notes indebtedness.

Third-Party Defendants DEUTSCHE BANK NATIONAL TRUST COMPANY, SOUNDVIEW HOME LOAN TRUST 2006-OPT5, and Plaintiff METRO FINANCIAL FAILED to record a valid Assignment of Deed of Trust prior to foreclosing on the Real Property of COUNTERFEIT PROMISSORY NOTE ARE CONSIDERED FOR LAWFUL VALUE IN THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA.

IF PLAINTIFF RANCHO HORIZON, LLC and THIRD-PARTY DEFENDANTS, SOUNDVIEW HOME LOAN TRUST 2006-OPT5, DEUTSCHE BANK NATIONAL TRUST COMPANY, FAIL TO PRODUCE THE ORIGINAL WET INK PROMISSORY NOTES, SECURED BY THE DEED OF TRUST OF DEFENDANT, COUNTER-CLAIMANT, THIRD-PARTY PLAINTIFF REAL PROPERTY AS REQUIRED BY FEDERAL RULES OF EVIDENCE RULE 901 Authentic Evidence and RULE 1002 Requirement of Original. NO COPIES OR COUNTERFEIT PRODUCTION OF PROMISSORY NOTES ARE ADMISSIBLE IN THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA.

An award of Treble Damages, Intangible Damages, Land Damages, Future Damages and attorney fees if attorneys were to be retained in favor of Samuel Gonzalez against all Third-Party Defendants, and Plaintiff, jointly and severally, for

all damages sustained as a result of Plaintiff and Third-Party Defendants

wrongdoing.

FOR RESTITUTION AND POSSESSION OF THE PROPERTY Order for

Rescission California Civil Code 1058.52, Federal Rules of Civil Procedure Rule

64(b) Replevin, of the property Located at 8719 Cavel Street, Downey, California

[90242] as Recorded in the State of California, Los Angeles County Recorder's

Office and any award as The united states District Court, Central District of

California may deem any such further relief as proper.

I, Samuel Gonzalez declare under oath, penalty of perjury under Laws of the State

of California and The United States of America that foregoing is true and correct.

Respectfully Submitted,

Samuel Gonzalez
Defendant, Counter-Claimants,
Third-Party Plaintiffs
in Pro Se

**CERTIFICATE OF FILING AND SERVICE**

**I the undersigned Defendant do hereby certify that I filed an original signed copy of**

**the above-and-foregoing Notice of Civil Rights Removal with the Los Angeles County**

**Superior Court Clerk for the State of California and simultaneously served a true and**

22

correct copy of the same on each of the following known parties to the above entitled and numbered cause as follows:

**Clerk of Court**
**Superior Court of California, Los Angeles County**
**Central Justice Center**
**7500 East Imperial Hwy.**
**Los Angeles, CA 90242**

**And**

**Sam Chandra,**
**710 S. Myrtle Ave., # 600**
**Monrovia, CA 91016**
**Tel. (626) 256-4999**

Respectfully Signed,

Tuesday, April 24, 2012

By: _____

Samuel Gonzalez, a living man
Executer, Beneficiary,
*in propia persona*

23

NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EVIDENCE  1
# DEED OF TRUST

NOTICE OF REMOVAL

INVESTORS TITLE COMPANY
Recording Requested By
METRO FINANCIAL

And After Recording Return To
Loan Number: 49074-46

**06  0957554**

METRO FINANCIAL
1000 S. SAN GABRIEL BLVD.
SUITE 206
ROSEMEAD, CALIFORNIA 91770

14110335

6258-013-038

—————————————————————————— [Space Above This Line For Recording Data] ——————————————————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

(A)  "Security Instrument" means this document, which is dated     APRIL 21, 2006     , together with all Riders to this document
(B)  "Borrower" is  SAMUEL GONZALEZ, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument
(C)  "Lender" is  METRO FINANCIAL

Lender is a  CALIFORNIA CORPORATION                                              organized
and existing under the laws of  CALIFORNIA
Lender's address is  1000 S. SAN GABRIEL BLVD., #206, ROSEMEAD, CALIFORNIA 91770
Lender is the beneficiary under this Security Instrument
(D)  "Trustee" is  INVESTORS TITLE COMPANY
12900 CROSSROADS PARKWAY S. #150, LA PUENTE, CALIFORNIA 91746

(E)  "Note" means the promissory note signed by Borrower and dated     APRIL 21, 2006     .
The Note states that Borrower owes Lender   THREE HUNDRED NINETY-FIVE THOUSAND AND 00/100                          Dollars (U S $ 395,000.00          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  MAY 1, 2036
(F)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property "
(G)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

---

DocMagic *eFarms* 800-649-1362
www.docmagic.com

(H)  "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

☐ Adjustable Rate Rider       ☐ Planned Unit Development Rider
☐ Balloon Rider              ☐ Biweekly Payment Rider
☐ 1-4 Family Rider          ☐ Second Home Rider
☐ Condominium Rider       ☐ Other(s) [specify]

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(L)  "Escrow Items" means those items that are described in Section 3

(M)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U S C  §2601 et seq ) and its implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY            of            LOS ANGELES
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 6258-013-038

05/02/06

DocMagic *eForms* 800-649-1362
www docmagic com

06  0957554

which currently has the address of   8719 CAVEL STREET

[Street]

DOWNEY                         , California   90242   ("Property Address")

[City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property   All replacements and additions shall also be covered by this Security Instrument   All of the foregoing is referred to in this Security Instrument as the "Property "

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note   Borrower shall also pay funds for Escrow Items pursuant to Section 3   Payments due under the Note and this Security Instrument shall be made in U S  currency   However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15   Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current   Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted   If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds   Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current   If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower   If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure   No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

DocMagic *eForms* 800-649-1362
www docmagic com

06  0957554

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items "  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA,

06  0957554



Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments   If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4.   Charges; Liens**   Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any   To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument   If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien   Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5.   Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance   This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires   What Lender requires pursuant to the preceding sentences can change during the term of the Loan   The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably   Lender may require Borrower to pay, in connection with this Loan, either   (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification   Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense   Lender is under no obligation to purchase any particular type or amount of coverage   Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect   Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained   Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument   These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance   Lender shall have the right to hold the policies and renewal certificates   If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices   If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                                        Page 5 of 14                         DocMagic *eForms* 800-549 1362
                                                                                                                                www docmagic com

06  0957554

and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender   Lender may make proof of loss if not made promptly by Borrower   Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened   During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds   Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower   If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower   Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters   If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim   The 30-day period will begin when the notice is given   In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property   Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition   Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage   If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property   If it has reasonable cause, Lender may inspect the interior of the improvements on the Property   Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan   Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal

06  0957554

proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.  If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance "  Further

06  0957554

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value  Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower   Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower   Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several   However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer")  (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument   Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing   The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee   Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower   Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower   If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)   Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing   Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means   Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise   The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address   If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure   There may be only one designated notice address under this Security Instrument at any one time   Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower   Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender   If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located   All rights and obligations contained in

*DocMagic* **eForms** 800-649-1362
*www docmagic com*

06  0957554

this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01     Page 10 of 14     DocMagic eForms 800-649-1362
www docmagic com

05 02 06

06 0957554



Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

06  0957554

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

_____ (Seal)                          _____ (Seal)
SAMUEL  GONZALEZ         -Borrower                                              -Borrower


_____ (Seal)                          _____ (Seal)
                        -Borrower                                              -Borrower


_____ (Seal)                          _____ (Seal)
                        -Borrower                                              -Borrower


Witness                                                 Witness


_____                                 _____


CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3005 1/01                          Page 13 of 14                          DocMagic *eForms* 800-649-1362
                                                                              www.docmagic.com

06  0957554

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of California                              )
                                                 ) SS
County of  LOS ANGELES                           )

On  APRIL 21, 2006          before me,    JESSICA CHAVEZ - A NOTARY Public

personally appeared   SAMUEL GONZALEZ

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal



JESSICA CHAVEZ
COMM. #1605588
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. Sept 10, 2009

NOTARY SEAL

_____
NOTARY SIGNATURE

JESSICA CHAVEZ
(Typed Name of Notary)

05/02/06

06 0957554

Loan Number    49074-46

Date    APRIL 21, 2006

Property Address    8719 CAVEL STREET, DOWNEY, CALIFORNIA 90242


### EXHIBIT "A"

### LEGAL DESCRIPTION


A.P.N. # : 6258-013-038

DocMagic €Forms 800-649 1362
www.docmagic.com

06 0957554

Page 6
File No  14110335-141

**Exhibit A**
**LEGAL DESCRIPTION**

All that certain real property in the County of LOS ANGELES, State of California, described as follows

LOT 2 OF TRACT NO  15560, IN THE CITY OF DOWNEY, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 339, PAGE(S) 44 AND 45 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY


APN No   6258-013-038

05/02/06

06  0957554

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EVIDENCE 2:

# FIRST 10 PAGES OF POOLING AND
# SERVICE AGREEMENT

NOTICE OF REMOVAL

EX-4.1 3 d518435_8k.htm POOLING AND SERVICING AGREEMENT

FINANCIAL ASSET SECURITIES CORP.,
Depositor

OPTION ONE MORTGAGE CORPORATION
Servicer

and

DEUTSCHE BANK NATIONAL TRUST COMPANY,
Trustee

POOLING AND SERVICING AGREEMENT

Dated as of June 1, 2006

---

Soundview Home Loan Trust 2006-OPT5

Asset-Backed Certificates, Series 2006-OPT5

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS
    SECTION 1.01   Defined Terms.
    SECTION 1.02   Accounting.
    SECTION 1.03   Allocation of Certain Interest Shortfalls.
    SECTION 1.04   Rights of the NIMS Insurer.
ARTICLE II CONVEYANCE OF MORTGAGE LOANS; ORIGINAL ISSUANCE OF CERTIFICATES
    SECTION 2.01   Conveyance of Mortgage Loans.
    SECTION 2.02   Acceptance by Trustee.
    SECTION 2.03   Repurchase or Substitution of Mortgage Loans by the Originator.
    SECTION 2.04   Intentionally Omitted.
    SECTION 2.05   Representations, Warranties and Covenants of the Servicer.
    SECTION 2.06   Representations and Warranties of the Depositor.
    SECTION 2.07   Issuance of Certificates.
    SECTION 2.08   [Reserved].
    SECTION 2.09   Acceptance of REMIC 1, REMIC 2, REMIC 3, REMIC 4, REMIC 5 and REMIC 6 by the Trustee; Conveyance of REMIC 1 Regular Interests, Class C Interest and Class P Interest; Issuance of Certificates.
ARTICLE III ADMINISTRATION AND SERVICING OF THE MORTGAGE LOANS
    SECTION 3.01   Servicer to Act as Servicer.
    SECTION 3.02   Sub-Servicing Agreements Between Servicer and Sub-Servicers.
    SECTION 3.03   Successor Sub-Servicers.
    SECTION 3.04   Liability of the Servicer.
    SECTION 3.05   No Contractual Relationship Between Sub-Servicers and the NIMS Insurer, the Trustee or Certificateholders.
    SECTION 3.06   Assumption or Termination of Sub-Servicing Agreements by Trustee.
    SECTION 3.07   Collection of Certain Mortgage Loan Payments.
    SECTION 3.08   Sub-Servicing Accounts.
    SECTION 3.09   Collection of Taxes, Assessments and Similar Items; Escrow Accounts.
    SECTION 3.10   Collection Account and Distribution Account.
    SECTION 3.11   Withdrawals from the Collection Account and Distribution Account.
    SECTION 3.12   Investment of Funds in the Collection Account and the Distribution Account.
    SECTION 3.13   [Reserved].
    SECTION 3.14   Maintenance of Hazard Insurance and Errors and Omissions and Fidelity Coverage.
    SECTION 3.15   Enforcement of Due-On-Sale Clauses; Assumption Agreements.
    SECTION 3.16   Realization Upon Defaulted Mortgage Loans.
    SECTION 3.17   Trustee to Cooperate; Release of Mortgage Files.
    SECTION 3.18   Servicing Compensation.
    SECTION 3.19   Reports to the Trustee; Collection Account Statements.
    SECTION 3.20   Statement as to Compliance.
    SECTION 3.21   Assessments of Compliance and Attestation Reports.
    SECTION 3.22   Access to Certain Documentation; Filing of Reports by Trustee.
    SECTION 3.23   Title, Management and Disposition of REO Property.
    SECTION 3.24   Obligations of the Servicer in Respect of Prepayment Interest Shortfalls.
    SECTION 3.25   [Reserved].
    SECTION 3.26   Obligations of the Servicer in Respect of Mortgage Rates and Monthly Payments.
    SECTION 3.27   Solicitations.
    SECTION 3.28   [Reserved].
    SECTION 3.29   Advance Facility.
ARTICLE IV FLOW OF FUNDS
    SECTION 4.01   Distributions.
    SECTION 4.02   [Reserved].
    SECTION 4.03   Statements.
    SECTION 4.04   Remittance Reports; Advances.
    SECTION 4.05   Swap Account.

SECTION 4.06   Tax Treatment of Swap Payments and Swap Termination Payments.
SECTION 4.07   Commission Reporting.
SECTION 4.08   Net WAC Rate Carryover Reserve Account.
SECTION 4.09   Distributions on the REMIC Regular Interests.
SECTION 4.10   Allocation of Realized Losses.

ARTICLE V THE CERTIFICATES
SECTION 5.01   The Certificates.
SECTION 5.02   Registration of Transfer and Exchange of Certificates.
SECTION 5.03   Mutilated, Destroyed, Lost or Stolen Certificates.
SECTION 5.04   Persons Deemed Owners.
SECTION 5.05   Appointment of Paying Agent.

ARTICLE VI THE SERVICER, THE DEPOSITOR AND THE CREDIT RISK MANAGER
SECTION 6.01   Liability of the Servicer and the Depositor.
SECTION 6.02   Merger or Consolidation of, or Assumption of the Obligations of, the Servicer or the Depositor.
SECTION 6.03   Limitation on Liability of the Servicer and Others.
SECTION 6.04   Servicer Not to Resign.
SECTION 6.05   Delegation of Duties.
SECTION 6.06   [Reserved].
SECTION 6.07   Inspection.
SECTION 6.08   Credit Risk Manager.

ARTICLE VII DEFAULT
SECTION 7.01   Servicer Events of Termination.
SECTION 7.02   Trustee to Act; Appointment of Successor.
SECTION 7.03   Waiver of Defaults.
SECTION 7.04   Notification to Certificateholders.
SECTION 7.05   Survivability of Servicer Liabilities.

ARTICLE VIII THE TRUSTEE
SECTION 8.01   Duties of Trustee.
SECTION 8.02   Certain Matters Affecting the Trustee.
SECTION 8.03   Trustee Not Liable for Certificates or Mortgage Loans.
SECTION 8.04   Trustee May Own Certificates.
SECTION 8.05   Trustee Compensation, Custodial Fee and Expenses.
SECTION 8.06   Eligibility Requirements for Trustee.
SECTION 8.07   Resignation or Removal of Trustee.
SECTION 8.08   Successor Trustee.
SECTION 8.09   Merger or Consolidation of Trustee.
SECTION 8.10   Appointment of Co-Trustee or Separate Trustee.
SECTION 8.11   Limitation of Liability.
SECTION 8.12   Trustee May Enforce Claims Without Possession of Certificates.
SECTION 8.13   Suits for Enforcement.
SECTION 8.14   Waiver of Bond Requirement.
SECTION 8.15   Waiver of Inventory, Accounting and Appraisal Requirement.
SECTION 8.16   Appointment of the Custodian.

ARTICLE IX REMIC ADMINISTRATION
SECTION 9.01   REMIC Administration.
SECTION 9.02   Prohibited Transactions and Activities.
SECTION 9.03   Indemnification with Respect to Certain Taxes and Loss of REMIC Status.

ARTICLE X TERMINATION
SECTION 10.01   Termination.
SECTION 10.02   Additional Termination Requirements.

ARTICLE XI MISCELLANEOUS PROVISIONS
SECTION 11.01   Amendment.
SECTION 11.02   Recordation of Agreement; Counterparts.
SECTION 11.03   Limitation on Rights of Certificateholders.
SECTION 11.04   Governing Law; Jurisdiction.
SECTION 11.05   Notices.
SECTION 11.06   Severability of Provisions.

SECTION 11.07  Article and Section References.
SECTION 11.08  Notice to the Rating Agencies, the Swap Provider and the NIMS Insurer.
SECTION 11.09  Further Assurances.
SECTION 11.10  Third Party Rights.
SECTION 11.11  Benefits of Agreement.
SECTION 11.12  Acts of Certificateholders.
SECTION 11.13  Intention of the Parties and Interpretation.

Exhibits:

| | |
|---|---|
| Exhibit A-1 | Form of Class I-A-1 Certificates |
| Exhibit A-2 | Form of Class II-A-1 Certificates |
| Exhibit A-3 | Form of Class II-A-2 Certificates |
| Exhibit A-4 | Form of Class II-A-3 Certificates |
| Exhibit A-5 | Form of Class II-A-4 Certificates |
| Exhibit A-6 | Form of Class M-1 Certificates |
| Exhibit A-7 | Form of Class M-2 Certificates |
| Exhibit A-8 | Form of Class M-3 Certificates |
| Exhibit A-9 | Form of Class M-4 Certificates |
| Exhibit A-10 | Form of Class M-5 Certificates |
| Exhibit A-11 | Form of Class M-6 Certificates |
| Exhibit A-12 | Form of Class M-7 Certificates |
| Exhibit A-13 | Form of Class M-8 Certificates |
| Exhibit A-14 | Form of Class M-9 Certificates |
| Exhibit A-15 | Form of Class M-10 Certificates |
| Exhibit A-16 | Form of Class M-11 Certificates |
| Exhibit A-17 | Form of Class M-12 Certificates |
| Exhibit A-18 | Form of Class C Certificates |
| Exhibit A-19 | Form of Class P Certificates |
| Exhibit A-20 | Form of Class R Certificates |
| Exhibit A-21 | Form of Class R-X Certificates |
| Exhibit B | [Reserved] |
| Exhibit C | Form of Mortgage Loan Purchase Agreement |
| Exhibit D | Mortgage Loan Schedule |
| Exhibit E | Request for Release |
| Exhibit F-1 | Form of Trustee's/Custodian's Initial Certification |
| Exhibit F-2 | Form of Trustee's/Custodian's Final Certification |
| Exhibit F-3 | Form of Receipt of Mortgage Note |
| Exhibit G | Form of Custodial Agreement |
| Exhibit H | Form of Lost Note Affidavit |
| Exhibit I | Form of Limited Power of Attorney |
| Exhibit J | Form of Investment Letter |
| Exhibit K | Form of Transfer Affidavit for Residual Certificates |
| Exhibit L | Form of Transferor Certificate |
| Exhibit M | Form of ERISA Representation Letter |
| Exhibit N-1 | Form Certification to be Provided by the Depositor with Form 10 K |
| Exhibit N-2 | Form Certification to be Provided to the Depositor by the Trustee |
| Exhibit N-3 | Form Certification to be Provided to the Depositor by the Servicer |
| Exhibit O | [Reserved] |
| Exhibit P | Form of Annual Statement as to Compliance |
| Exhibit Q | Form of Interest Rate Swap Agreement |
| Exhibit R | Form of Swap Administration Agreement |
| Exhibit S | Servicing Criteria |
| Exhibit T | Form 10-D, Form 8-K and Form 10-K Reporting Responsibility |
| | |
| Schedule I | Prepayment Charge Schedule |
| Schedule II | Swap Payment Schedule |

Unassociated Document

      This Pooling and Servicing Agreement is dated as of June 1, 2006 (the "Agreement"), among FINANCIAL ASSET SECURITIES CORP., as depositor (the "Depositor"), OPTION ONE MORTGAGE CORPORATION, as servicer (the "Servicer") and DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee and supplemental interest trust trustee (the "Trustee" and the "Supplemental Interest Trust Trustee").

PRELIMINARY STATEMENT:

      The Depositor intends to sell pass-through certificates (collectively, the "Certificates"), to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Trust Fund created hereunder. The Certificates will consist of twenty-one classes of certificates, designated as (i) the Class I-A-1 Certificates, (ii) the Class II-A-1 Certificates, (iii) the Class II-A-2 Certificates, (iv) Class II-A-3 Certificates, (v) the Class II-A-4 Certificates, (vi) the Class M-1 Certificates (vii) the Class M-2 Certificates, (viii) the Class M-3 Certificates, (ix) the Class M-4 Certificates, (x) the Class M-5 Certificates, (xi) the Class M-6 Certificates, (xii) the Class M-7 Certificates, (xiii) the Class M-8 Certificates, (xiv) the Class M-9 Certificates, (xv) the Class M-10 Certificates, (xvi) the Class M-11 Certificates, (xvii) the Class M-12 Certificates, (xviii) the Class C Certificates, (xix) the Class P Certificates, (xx) the Class R Certificates and (xxi) the Class R-X Certificates.

<u>REMIC 1</u>

As provided herein, the Trustee shall elect to treat the segregated pool of assets consisting of the Mortgage Loans and certain other related assets subject to this Agreement (exclusive of the Net WAC Rate Carryover Reserve Account, the Swap Account, the Serivicer Prepayment Charge Payment Amounts, the Supplemental Interest Trust and the Interest Rate Swap Agreement) subject to this Agreement as a REMIC for federal income tax purposes, and such segregated pool of assets shall be designated as "REMIC 1." The Class R-1 Interest shall represent the sole class of "residual interests" in REMIC 1 for purposes of the REMIC Provisions (as defined herein). The following table irrevocably sets forth the designation, the Uncertificated REMIC 1 Pass-Through Rate, the initial Uncertificated Principal Balance and, for purposes of satisfying Treasury Regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC 1 Regular Interests (as defined herein). None of the REMIC 1 Regular Interests shall be certificated.

| Designation | Uncertificated REMIC 1 Pass-Through Rate | Initial Uncertificated Principal Balance | Latest Possible Maturity Date[(1)] |
|---|---|---|---|
| I | Variable (2) | $ 45,563,741.98 | July 25, 2036 |
| I-1-A | Variable (2) | $ 11,431,443.75 | July 25, 2036 |
| I-1-B | Variable (2) | $ 11,431,443.75 | July 25, 2036 |
| I-2-A | Variable (2) | $ 17,073,813.75 | July 25, 2036 |
| I-2-B | Variable (2) | $ 17,073,813.75 | July 25, 2036 |
| I-3-A | Variable (2) | $ 22,583,438.75 | July 25, 2036 |
| I-3-B | Variable (2) | $ 22,583,438.75 | July 25, 2036 |
| I-4-A | Variable (2) | $ 25,242,048.75 | July 25, 2036 |
| I-4-B | Variable (2) | $ 25,242,048.75 | July 25, 2036 |
| I-5-A | Variable (2) | $ 27,826,558.75 | July 25, 2036 |
| I-5-B | Variable (2) | $ 27,826,558.75 | July 25, 2036 |
| I-6-A | Variable (2) | $ 30,321,713.75 | July 25, 2036 |
| I-6-B | Variable (2) | $ 30,321,713.75 | July 25, 2036 |
| I-7-A | Variable (2) | $ 32,712,483.75 | July 25, 2036 |
| I-7-B | Variable (2) | $ 32,712,483.75 | July 25, 2036 |
| I-8-A | Variable (2) | $ 34,969,683.75 | July 25, 2036 |
| I-8-B | Variable (2) | $ 34,969,683.75 | July 25, 2036 |
| I-9-A | Variable (2) | $ 37,092,448.75 | July 25, 2036 |
| I-9-B | Variable (2) | $ 37,092,448.75 | July 25, 2036 |
| I-10-A | Variable (2) | $ 38,766,076.25 | July 25, 2036 |
| I-10-B | Variable (2) | $ 38,766,076.25 | July 25, 2036 |
| I-11-A | Variable (2) | $ 40,078,308.75 | July 25, 2036 |
| I-11-B | Variable (2) | $ 40,078,308.75 | July 25, 2036 |
| I-12-A | Variable (2) | $ 41,255,345.00 | July 25, 2036 |
| I-12-B | Variable (2) | $ 41,255,345.00 | July 25, 2036 |
| I-13-A | Variable (2) | $ 42,289,261.25 | July 25, 2036 |
| I-13-B | Variable (2) | $ 42,289,261.25 | July 25, 2036 |
| I-14-A | Variable (2) | $ 43,172,228.75 | July 25, 2036 |
| I-14-B | Variable (2) | $ 43,172,228.75 | July 25, 2036 |
| I-15-A | Variable (2) | $ 43,897,460.00 | July 25, 2036 |
| I-15-B | Variable (2) | $ 43,897,460.00 | July 25, 2036 |
| I-16-A | Variable (2) | $ 44,459,272.50 | July 25, 2036 |

| | | | | |
|---|---|---|---|---|
| I-16-B | Variable (2) | $ | 44,455,212.50 | July 25, 2036 |
| I-17-A | Variable (2) | $ | 44,853,375.00 | July 25, 2036 |
| I-17-B | Variable (2) | $ | 44,853,375.00 | July 25, 2036 |
| I-18-A | Variable (2) | $ | 45,072,413.75 | July 25, 2036 |
| I-18-B | Variable (2) | $ | 45,072,413.75 | July 25, 2036 |
| I-19-A | Variable (2) | $ | 45,119,548.75 | July 25, 2036 |
| I-19-B | Variable (2) | $ | 45,119,548.75 | July 25, 2036 |
| I-20-A | Variable (2) | $ | 44,974,500.00 | July 25, 2036 |
| I-20-B | Variable (2) | $ | 44,974,500.00 | July 25, 2036 |
| I-21-A | Variable (2) | $ | 44,556,567.50 | July 25, 2036 |
| I-21-B | Variable (2) | $ | 44,556,567.50 | July 25, 2036 |
| I-22-A | Variable (2) | $ | 41,912,701.25 | July 25, 2036 |
| I-22-B | Variable (2) | $ | 41,912,701.25 | July 25, 2036 |
| I-23-A | Variable (2) | $ | 39,519,251.25 | July 25, 2036 |
| I-23-B | Variable (2) | $ | 39,519,251.25 | July 25, 2036 |
| I-24-A | Variable (2) | $ | 37,266,366.25 | July 25, 2036 |
| I-24-B | Variable (2) | $ | 37,266,366.25 | July 25, 2036 |
| I-25-A | Variable (2) | $ | 35,145,457.50 | July 25, 2036 |
| I-25-B | Variable (2) | $ | 35,145,457.50 | July 25, 2036 |
| I-26-A | Variable (2) | $ | 33,148,678.75 | July 25, 2036 |
| I-26-B | Variable (2) | $ | 33,148,678.75 | July 25, 2036 |
| I-27-A | Variable (2) | $ | 31,268,662.50 | July 25, 2036 |
| I-27-B | Variable (2) | $ | 31,268,662.50 | July 25, 2036 |
| I-28-A | Variable (2) | $ | 29,494,027.50 | July 25, 2036 |
| I-28-B | Variable (2) | $ | 29,494,027.50 | July 25, 2036 |
| I-29-A | Variable (2) | $ | 27,827,653.75 | July 25, 2036 |
| I-29-B | Variable (2) | $ | 27,827,653.75 | July 25, 2036 |
| I-30-A | Variable (2) | $ | 26,258,425.00 | July 25, 2036 |
| I-30-B | Variable (2) | $ | 26,258,425.00 | July 25, 2036 |
| I-31-A | Variable (2) | $ | 24,780,580.00 | July 25, 2036 |
| I-31-B | Variable (2) | $ | 24,780,580.00 | July 25, 2036 |
| I-32-A | Variable (2) | $ | 23,388,567.50 | July 25, 2036 |
| I-32-B | Variable (2) | $ | 23,388,567.50 | July 25, 2036 |
| I-33-A | Variable (2) | $ | 22,077,458.75 | July 25, 2036 |
| I-33-B | Variable (2) | $ | 22,077,458.75 | July 25, 2036 |
| I-34-A | Variable (2) | $ | 20,840,657.50 | July 25, 2036 |
| I-34-B | Variable (2) | $ | 20,840,657.50 | July 25, 2036 |
| I-35-A | Variable (2) | $ | 19,677,546.25 | July 25, 2036 |
| I-35-B | Variable (2) | $ | 19,677,546.25 | July 25, 2036 |
| I-36-A | Variable (2) | $ | 18,581,835.00 | July 25, 2036 |
| I-36-B | Variable (2) | $ | 18,581,835.00 | July 25, 2036 |
| I-37-A | Variable (2) | $ | 17,549,483.75 | July 25, 2036 |
| I-37-B | Variable (2) | $ | 17,549,483.75 | July 25, 2036 |
| I-38-A | Variable (2) | $ | 16,576,756.25 | July 25, 2036 |
| I-38-B | Variable (2) | $ | 16,576,756.25 | July 25, 2036 |
| I-39-A | Variable (2) | $ | 15,660,115.00 | July 25, 2036 |